# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

KEVIN KENNETH SEARS,

    Plaintiff,

vs.

JOHN LINDAMAN; and
BENTON COUNTY, IOWA,

    Defendants.

No. 16-CV-172-CJW

**ORDER**

_____

TABLE OF CONTENTS

I. Background ……………………………………………………………………… 2

II. Applicable Law ………………………………………………………………… 4

  A. Summary Judgment …………………………………………………………… 4

  B. Qualified Immunity …………………………………………………………… 6

III. Discussion ……………………………………………………………………… 8

  A. Officer Lindaman in His Individual Capacity …………………………………… 9

  B. Benton County ………………………………………………………………… 16

IV. Conclusion …………………………………………………………………… 19

    This matter is before the Court on John Lindaman and Benton County, Iowa's (collectively, "defendants") Motion for Summary Judgment. (Doc. 15). Kevin Kenneth Sears ("plaintiff") timely filed his resistance (Doc. 21), and defendants timely filed their reply (Doc. 24). The Court granted the parties leave to submit informal supplemental

briefing and newly discovered authority. Defendants submitted newly discovered authority (Doc. 32), which the Court has considered. Plaintiff declined to avail himself of this opportunity. Although requested, the Court determined that oral argument was not necessary. For the following reasons, defendants' motion for summary judgment is **granted.**

## I. BACKGROUND

Plaintiff brings this suit under 42 U.S.C. § 1983 to recover damages allegedly incurred following his arrest in Benton County, Iowa for operating a motor vehicle while intoxicated, an offense of which he was never convicted. (Docs. 2; 15-1, at 10; 21-1, at 9).

On the evening of September 17, 2014, and the early morning of September 18, 2014, plaintiff held a license permitting him to operate commercial motor vehicles. (Docs. 15-1, at 1; 21-1, at 1). The evening of September 17, 2014, plaintiff parked his self-owned semi-truck in front of a property he owned, but which was occupied by his daughter. (Docs. 15-1, at 1-2; 21-1, at 1). Plaintiff's daughter made a 911 call the evening of September 17, 2014, requesting that an officer be dispatched to have plaintiff move his truck away from the daughter's residence. During the phone call, plaintiff's daughter can be heard telling the dispatcher that plaintiff had been drinking, but that she did not know if plaintiff was drunk. The dispatcher, however, told Officer John Lindaman that plaintiff's daughter reported that plaintiff was, in fact, drunk. Thus, the dispatcher relayed that plaintiff was drunk, even though the dispatcher had only been informed that plaintiff had been drinking.

Officer Lindaman was dispatched to the scene. When Officer Lindaman arrived, plaintiff was asleep in the sleeper compartment of the semi-truck. (Docs. 15-1, at 6; 21-1, at 6). Defendants allege, and plaintiff does not dispute, that the sleeper compartment is wholly separate from the driver/passenger area of the truck and that to get to the

driver's seat from the sleeper compartment, one would have to walk out of the sleeper compartment and between the driver's and passenger's seats to reach the area from which the truck could actually be driven. (Docs. 15-1, at 6; 21-1, at 6). Thus, to exit the sleeper compartment of the truck through the driver's side door—as plaintiff allegedly did—plaintiff would have had to cross in front of the driver's seat.

Upon his arrival at the scene, the truck was running, and Officer Lindaman could see the flicker from a television set coming from the sleeper area. (Doc. 15-2, at 74). Further, the truck was parked facing the opposite direction as traffic. (Docs. 15-1, at 4-5, 21-1, at 5). Officer Lindaman knocked on the driver's side door, plaintiff emerged, and the two engaged in a conversation. During that conversation, Officer Lindaman inquired as to whether plaintiff had been drinking. Plaintiff responded that he had been asleep and that Officer Lindaman had woken him up. Officer Lindaman repeatedly expressed to plaintiff his belief that plaintiff had been drinking and that plaintiff smelled of alcohol.

Officer Lindaman ascertained that upon his arrival, plaintiff was in the sleeper compartment of the semi-truck and was not in the front compartment of the truck from which one would drive. Officer Lindaman thus was uncertain as to whether plaintiff could be considered to have been "operating" a motor vehicle within the meaning of Iowa's operating while intoxicated statute. Officer Lindaman contacted dispatch and requested that dispatch reach out to the Department of Transportation for guidance as to whether plaintiff was in violation of the statute. Officer Lindaman was unable to obtain such guidance and ultimately arrested plaintiff for operating while intoxicated. At some point prior to his arrest, plaintiff turned off the truck.[1] In turning off the vehicle, plaintiff

---

[1] The parties dispute the circumstances surrounding why plaintiff turned the truck off. To the best of the Court's understanding, plaintiff argues that Officer Lindaman requested that plaintiff turn the truck off (Doc. 21-1, at 8), while defendants contend that plaintiff "slip[ped] in to [sic]

would have been positioned in the driver's area and within reach of all of the driving controls.

Plaintiff was taken before an Iowa state court magistrate the morning of September 18, 2014. The magistrate ordered plaintiff released. As a result, although the magistrate indicated a belief that probable cause existed for the arrest, no such finding appears to have been made on the record. (*See* Doc. 15-2, at 67-71). The state court ultimately suppressed much of the evidence obtained and the State subsequently dismissed the charges against plaintiff. (Docs. 15-1, at 10; 21-1, at 9). *Iowa v. Sears*, No. OWCR012800 (Benton Cnty., Iowa June 1, 2015) (slip op.).

As a result of the above events, plaintiff alleges that his driving privileges were revoked. (Doc. 2, at 5). The revocation included plaintiff's privilege to operate commercial motor vehicles. Prior to his arrest, plaintiff alleges that he owned a trucking company and employed several drivers to transport goods throughout the United States and Canada. (*Id.*). Upon the revocation of plaintiff's driver's license, plaintiff could no longer obtain commercial vehicle insurance for those employed by the company. (*Id.*). As a result, plaintiff's company breached certain contracts and had to cease operations. (*Id.*). Plaintiff's suit aims to recover damages associated with the loss of his driving privileges and consequential damages stemming from plaintiff's inability to continue operating his trucking business. Defendants, in turn, claim they are immune from suit under 42 U.S.C. § 1983.

## II.   APPLICABLE LAW

### A.   *Summary Judgment*

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

the driver's seat, turn[ed] off the engine . . . and step[ped] outside to talk with Lindaman" (Doc. 24, at 2).

of law." FED. R. CIV. P. 56(a) (2016). A movant must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395. Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the

benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (In ruling on a motion for summary judgment in a Section 1983 case, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" (citation and internal quotation marks omitted).); *Matsushita*, 475 U.S. at 587-88 (citation omitted); *see also Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

### B. *Qualified Immunity*

When a motion for summary judgment rests on the assertion of qualified immunity, summary judgment is appropriate only if the Court finds 1) there are no genuine issues of material fact that would counter the qualified immunity defense, and 2) summary judgment on the issue of qualified immunity is proper as a matter of law. *Johnson v. Jones*, 515 U.S. 304, 313-14 (1995) (suggesting that, had the movant been entitled to summary judgment as a matter of law, summary judgment on the qualified immunity defense would have been proper in the absence of a genuine issue of material fact). Thus, it can be said that when the defense of qualified immunity is raised, the movant need not prove the absence of *any* material fact, but need only prove the absence of any material fact relating to *the defense of qualified immunity*. If a dispute exists as to any material fact not pertaining to qualified immunity, but there are no disputes of material fact on the

qualified immunity issue, summary judgment on the qualified immunity issue will be proper if the movant is so entitled as a matter of law. In keeping with the traditional summary judgment standard, all inferences of fact must be drawn in favor of the non-moving party. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008).

Qualified immunity is "an immunity from suit rather than a mere defense to liability [and] it is effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity generally shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted). Further:

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.

*Id.* "[E]ven in the complete absence of any decisions involving similar facts, a right can be 'clearly established' if a reasonable public official would have known that the conduct complained of was unlawful." *Turner v. Ark. Ins. Dep't*, 297 F.3d 751, 755 (8th Cir. 2002).

"[E]xisting law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 137 S.Ct. 577, 589 (2018) (internal citations and quotation marks omitted). Further, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular

rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know." *Id.* at 590 (internal quotation marks and citations omitted).

The fact that a defendant did not have actual knowledge of the law is not enough, barring "extraordinary circumstances," to evade liability. *Harlow*, 457 U.S. at 818-19. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* The Court therefore must determine whether the relevant law was clearly established and whether a reasonable person would have known of that law. The Court may address these questions in either order. *Pearson*, 555 U.S. at 233-36 (The courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

### III. DISCUSSION

Plaintiff asserts two claims against each defendant and two claims common to both defendants. Each claim stems from plaintiff's allegation that plaintiff's arrest was unlawful because Officer Lindaman allegedly did not have probable cause to arrest plaintiff. Specifically, plaintiff argues that because he was not operating a motor vehicle within the meaning of the Iowa operating while intoxicated statute, Officer Lindaman could not have probable cause to believe plaintiff was committing a crime. In their motion for summary judgment, defendants argue that whether plaintiff was operating a motor vehicle was not clearly established at the time of the arrest and, thus, Officer Lindaman is entitled to qualified immunity, that Benton County cannot be liable under the doctrine of *respondeat superior*, and that plaintiff's claims that his company suffered financial losses are improperly set forth in this suit. The Court need not determine whether subsequent findings of probable cause by state judicial officers served to break the chain of causation between the allegedly unlawful arrest and plaintiff's damages.

8

Plaintiff's complaint brings one count (Count One) against "Defendant Lindaman in his individual and official capacities," and two counts (Counts Three and Four) against "Defendant Lindaman, including *respondeat superior* liability against Defendant Benton County." (Doc. 2, at 6-9). "A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Thus, the claims asserted against Officer Lindaman in his official capacity may properly be attributed to Benton County.

Although plaintiff specifies that the first count is brought against Officer Lindaman in his personal and official capacities, plaintiff does not so specify as to the third and fourth counts. The failure to make such a distinction, coupled with the intent to bring a claim against the county under the doctrine of *respondeat superior* indicates that plaintiff intended to name Officer Lindaman in his official capacity for the purposes of Counts Three and Four. *Philadelphia & Reading R. Co. v. Derby*, 55 U.S. 468, 480 (1852) ("A master is ordinarily liable to answer in a civil suit for the tortious or wrongful acts of his servant, *if those acts are done in the course of his employment in his master's service*." (emphasis added) (internal quotation marks omitted).). The Court recognizes that this may not, in fact, have been plaintiff's intention, and the Court will not presently address the sufficiency of the pleadings. Instead, the Court finds that considering Counts Three and Four as attributable to Officer Lindaman in both his official and individual capacities is dispositive. Although the Court is doubtful that these claims have been brought against Officer Lindaman in both capacities, this approach gives plaintiff the fullest benefit of the pleadings while allowing the Court to fully resolve the issues currently presented.

### A. *Officer Lindaman in His Individual Capacity*

To the best of the Court's understanding, the crux of defendants' argument is that, at the time of the arrest, it was not clearly established whether an individual in plaintiff's

position could be considered to be operating a motor vehicle within the meaning of the Iowa statute. The parties do not address whether plaintiff's blood alcohol content was in excess of the legal limit. The key question, then, is whether, at the time of the arrest, Officer Lindaman had probable cause to believe that plaintiff had committed or was committing a crime.[2] Two questions are implicated: 1) whether an individual may be considered to be operating a semi-truck if the truck is on, but the individual is in the sleeper compartment; 2) whether an individual's act of exiting the truck on request of a police officer[3] by crossing in front of the truck's controls would fall within the meaning of operating a motor vehicle.

The Court will first turn to the language of the relevant statute. "A person commits the offense of operating while intoxicated if the person operates a motor vehicle in [Iowa] . . . [w]hile having an alcohol concentration of .08 or more." IOWA CODE § 321.J.2(1) (2015). The statute does not define the word "operating." The Supreme Court of Iowa has, however, considered the issue and determined that "operating" a vehicle requires

---

[2] The Court recognizes that Iowa is an implied consent state, meaning that any person operating a motor vehicle within the state implicitly consents to be tested for the presence of alcohol. IOWA CODE § 321 J.6(1) (2015). The harm alleged here, however, is predicated on the *arrest* and subsequent charges, as opposed to any inappropriate testing for the presence of alcohol. Thus, the Court's discussion will rotate around the appropriateness of the arrest.

[3] As mentioned *supra*, the exact circumstances surrounding plaintiff's exit from the truck are in dispute. Defendants, however, concede that plaintiff exited the truck in response to Officer Lindaman's knock on the truck door. (Doc. 15-4, at 13-14). As it would be more favorable to plaintiff to conclude that plaintiff's act of passing in front of the controls was a direct result of Officer Lindaman's knock—as opposed to plaintiff's voluntary act—the Court will conclude for the purposes of the instant motion only that plaintiff exited the truck in response to Officer Lindaman's knock on the door and subsequent request that plaintiff exit the truck, and that plaintiff would not have done so but for Officer Lindaman's presence. The Court recognizes that an argument could be made regarding plaintiff's potential ability to exit out of the passenger's door instead of the driver's-side door. Because neither party raised this issue, however, the Court will not address it *sua sponte*.

the vehicle to either be in motion or have its engine running. *Munson v. Iowa Dep't of Trans., Motor Vehicle Div.*, 513 N.W.2d 722, 724-25 (Iowa 1994).

Further, "[a] person may 'operate' a motor vehicle without 'driving' it." *Iowa v. Murray*, 539 N.W.2d 368, 369 (Iowa 1995). For instance, a defendant whose vehicle was parked on the highway was "operating" a motor vehicle when "in actual physical control of a fully operational motor vehicle when stopped by the police." *Iowa v. Weaver*, 405 N.W.2d 852, 855 (Iowa 1987). A defendant "was 'operating' his vehicle when he started the car's engine, thereby exerting control over the vehicle." *Iowa v. Hines*, 478 N.W.2d 888, 889 (Iowa Ct. App. 1991). Although "OWI statutes attempt to deter intoxicated individuals from getting into their vehicles except as passengers," *Murray*, 539 N.W.2d at 369, an intoxicated passenger who causes the driver to lose control of the vehicle could be guilty of "operating" the vehicle while intoxicated, *Franklin v. Iowa Dep't of Trans.*, 817 N.W.2d 495 (Iowa Ct. App. 2012); *Iowa v. Dahlheimer*, 2011 WL 3115846, at *5 (Iowa Ct. App. July 27, 2011). However, a person's "mere presence in a motor vehicle is not sufficient to find the person was operating." *Id.* Finally, Iowa courts interpret "operating" liberally "because the goal is 'to enable the drunken driver to be apprehended before he strikes.'" *Id.*, at *4.

Following a thorough search, the Court was unable to find any case law holding that a person could be considered to be operating a motor vehicle if he was the sole occupant but was not capable of exercising "actual physical control" over the vehicle. Indeed, the common thread throughout the case law involves someone who is either seated in the driver's seat or is in the passenger's seat, but is capable of exerting sufficient force over the vehicle to control it. This is supported by the Iowa Court of Appeals' indication that although a passenger ordinarily cannot be considered to be operating a vehicle, the passenger could be considered to be operating a vehicle if he caused the driver to lose control of the vehicle. *Id.*, at *5. There is no indication that the sole

occupant of a running vehicle can be considered to be "operating" the vehicle if he is not presently in a position to exert control over it.

When Officer Lindaman first knocked on the truck door, plaintiff was in the sleeper compartment and had to step between the passenger's seat and driver's seat to reach the control area of the truck. This would indicate that prior to Officer Lindaman's arrival, plaintiff was not capable of exercising "actual physical control" over the vehicle. On the other hand, however, the truck was running and plaintiff was capable of readily accessing the vehicle's controls and operating the vehicle. The evidence presented indicates that plaintiff merely had to take a few steps to reach the controls. Although plaintiff was not sitting in the driver's seat, Iowa law dictates that the operating while intoxicated statute is to be interpreted liberally. *Id.*, at *4.

The Court has been unable to find any case law establishing that an individual was not operating a vehicle when he had such ready access to the vehicle's controls when the vehicle was running. Put simply, the Court has been unable to find any guidance as to whether an individual could be "operating" a vehicle when he could readily access the controls in a running vehicle, but was not actually seated in the driver's seat. *See Wesby*, 138 S.Ct. at 590 (holding that a "high degree of specificity" is required for a law to be clearly established (internal citation and quotation marks omitted)). Given the statute's liberal interpretation and the lack of case law on the issue, the Court finds that Officer Lindaman could have reasonably believed that he had probable cause to arrest plaintiff for operating while intoxicated based on plaintiff's presence in the sleeper compartment of the truck. *See id.* at 590-91 (finding that the law was not clearly established in the Fourth Amendment context where no precedential authority was identified that found a Fourth Amendment violation "under similar circumstances" (internal quotation marks omitted)). *District of Columbia v. Wesby*, 137 S.Ct. 577, 589 (2018) (internal citations and quotation marks omitted). The precedential authority existing at the time of the arrest

was not "clear enough that every reasonable official would interpret it to establish" that plaintiff was operating the truck. *Wesby*, 137 S.Ct. at 589-90. Therefore, Officer Lindaman is entitled to qualified immunity. This, however, does not amount to a holding that plaintiff should have been found guilty of operating while intoxicated, or that the state court erred in its ruling on plaintiff's motion to suppress. Rather, this holding is narrowly confined to whether Officer Lindaman could have reasonably believed, based on the case law in existence at the time, that plaintiff was operating the truck within the meaning of the Iowa statute.

Finally, the Court finds it appropriate to comment on the public policy issue presented in this case. Iowa law and the courts recognize that it is in the public's best interest to discourage drunk driving and to allow law enforcement officers to protect the public. Where, as here, an officer is presented with a difficult question of statutory interpretation and must decide between making a potentially wrongful arrest and potentially endangering the public, the officer is forced to conduct a delicate balancing act.

Although the state court ultimately determined that plaintiff's arrest was wrongful, Officer Lindaman was without the ability to make such a determination in the moment, despite an effort to do so, and the existing case law was of little benefit. To allow Officer Lindaman to be subjected to civil liability under these circumstances would encourage other law enforcement officers to err on the side of protecting their own financial interests rather than the public when presented with situations in which the law is unclear. *Accord Pearson*, 555 U.S. at 231 ("Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield public officials from harassment, distraction, and liability when they perform their duties reasonably."). Although this may result in certain individuals being wrongfully deprived of their civil liberties, the State may restore civil liberties but cannot


bring back a deceased victim of drunk driving. As such, the Court holds that Officer Lindaman is entitled to qualified immunity because the law was not clearly established at the time of the arrest.

Even though the Court need not continue in its analysis, the Court finds it helpful to do so, in the event this case finds itself to be the subject of appeal. The next issue, then, is whether plaintiff's act of exiting the truck through the driver's-side door was sufficient to render him capable of "operating" the vehicle. Regardless of whether plaintiff turned the truck off upon first exiting or upon reentering the truck at a later time, the truck must have been on when plaintiff was within reach of the truck's controls. Thus, absent additional facts, the case law would indicate that plaintiff was "operating" the vehicle and Officer Lindaman therefore had probable cause to effect the arrest.

Plaintiff, however, alludes to an entrapment defense, arguing that exiting the truck in response to Officer Lindaman's request "was clearly submission to police authority." (Doc. 21-3, at 13). The Iowa Supreme Court has explicitly addressed entrapment:

> Entrapment may occur "when a law enforcement agent induces the commission of the offense, using persuasion or other means likely to cause law-abiding persons to commit it." *Iowa v. Tomlinson*, 243 N.W.2d 551, 553 (Iowa 1976) . . .. We have stated that "merely providing the opportunity or the facilities for the commission of a crime does not constitute entrapment." *Iowa v. Mullen*, 216 N.W.2d 375, 381 (Iowa 1974). Thus, entrapment must involve the use of excessive incitement, urging, persuasion, or temptation by law enforcement agents.

*Iowa v. Babers*, 514 N.W.2d 79, 83 (Iowa 1994).

Here, plaintiff merely asserts that plaintiff's exit "was clearly a submission to police authority." (Doc. 21-3, at 13). Plaintiff offers no further law or argument in support of his entrapment defense. The Court is unpersuaded that an officer's request that an occupant exit a vehicle, without any additional "excessive incitement, urging, persuasion, or temptation," rises to the level of entrapment. *Babers*, 514 N.W.2d at 83.

To hold that such a simple request amounts to entrapment could allow any defendant to claim entrapment if he acts only in response to a single, ordinary request from a law enforcement officer. As such, the Court declines to hold that plaintiff's entrapment defense must succeed.

The failure of plaintiff's entrapment defense leads the Court to conclude that, at the very least, a reasonable officer could have concluded that plaintiff was operating the truck when he turned off the ignition. Plaintiff was in "actual physical control" over the vehicle and, indeed, seems to admit that he did exercise "actual physical control" over the truck by turning it off. (Docs. 21-1, at 5, 21-3, at 13). Further, the evidence plaintiff submitted suggests that plaintiff remained in the truck conversing with Officer Lindaman for approximately four minutes prior to exiting the vehicle. (*See* Docs. 21-1, at 3-6, 21-1, at 5). Because Officer Lindaman, who was standing next to the driver's-side door, and plaintiff were able to converse without difficulty, plaintiff was, presumably, near the driver's window on the inside of the truck. Plaintiff did not have to remain in such close proximity to the truck's controls for several minutes. Indeed, Officer Lindaman had requested that plaintiff exit the vehicle, and plaintiff had refused. (Doc. 21-1, at 3). Plaintiff's voluntary choice to remain in such close proximity to the controls undercuts plaintiff's entrapment theory.[4] As such, the Court concludes that based on the law at the time of the arrest, Officer Lindaman could have reasonably believed that plaintiff was operating the truck in crossing in front of the truck's controls to exit the vehicle.

Because the law surrounding whether an individual is "operating" a motor vehicle was not clear at the time of the arrest such that a reasonable public official would have

---

[4] The Court also notes the possibility that plaintiff could have been on the passenger side of the truck while conversing with Officer Lindaman. If true, this could disturb the Court's theory that plaintiff voluntarily remained in a position that could render him in operation of the truck. As neither side raises this issue, however, the Court will assume that plaintiff was not on the passenger side of the truck.

15

known plaintiff was not operating a motor vehicle, Officer Lindaman is entitled to qualified immunity on all counts brought against him. *Harlow*, 457 U.S. at 818. Defendants' motion for summary judgment as to Officer Lindaman is **granted**.

Defendants' argument that the magistrate's finding of probable cause broke the chain of causation between Officer Lindaman and plaintiff's alleged injury is made only with respect to Officer Lindaman. (Doc. 15-4, at 21-22). Because the Court has determined that Officer Lindaman is entitled to qualified immunity, the Court need not reach this issue.

### B. *Benton County*

Turning now to the claims against Officer Lindaman in his official capacity—which are properly attributable to defendant Benton County—and against Benton County, the Court first notes that *respondeat superior* liability is not a valid vehicle by which to bring a Section 1983 claim. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Count One is brought against Officer Lindaman in his official capacity and thus will be considered to have been brought against the County. In recasting Count One as being against Officer Lindaman in his individual capacity and as against Benton County, the claim becomes one that rests on the theory of *respondeat superior*.

> [A] local government may not be sued under § 1983 for an injury inflicted by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694. Plaintiff does not advance an argument based on official policy or custom. Thus, Count One as applied to Benton County must fail. Likewise, Counts Three and Four, as against defendant Benton County, are premised solely on a *respondeat superior* theory and, therefore, must fail. Defendants' motion for summary judgment as to Counts One, Three, and Four is **granted**.

Count Two is brought against only Benton County. Plaintiff alleges that Benton County defendants "had policies, practices, customs, and usages that were a direct and proximate cause of the unconstitutional conduct (arrest without probable cause) alleged herein." (Doc. 2, at 7). Defendants correctly state that the Eighth Circuit Court of Appeals "has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005). Liability under Section 1983 may be imposed on a municipality if it has promulgated a custom or policy that violates federal law and, pursuant to that policy, a municipal actor has tortiously injured the plaintiff. *Monell*, 436 U.S. at 690-91.

Here, plaintiff alleges Officer Lindaman unlawfully arrested plaintiff without probable cause. The Court has found above that Officer Lindaman is entitled to qualified immunity on that issue because the law was not clearly established regarding whether plaintiff was operating a motor vehicle under the circumstances presented. Plaintiff conceded in his complaint that Benton County "has a facially constitutional written policy on arrest and investigation techniques," although he alleges the "policy has consistently been misapplied to allow . . . arrests without probable cause." (Doc. 2, at 8). Plaintiff's complaint points only to this one arrest, however, as a basis for this assertion. Plaintiff must provide "considerably more proof than a single incident" to establish municipal liability. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Although the *Tuttle* Court's pronouncement was made in the context of a case that had already proceeded through discovery and had been submitted to a jury, the Court finds that plaintiff must, at the very least, make allegations that would support application of his theory to more than one instance of conduct in order to survive summary judgment.

In his brief, plaintiff only cites to transcripts regarding the lack of specific training records and lack of specific instruction on the circumstances that confronted Deputy

17

Lindaman in this specific instance. Where, as here, the law regarding whether plaintiff was operating a motor vehicle was unclear, Benton County could not have been expected to train its personnel on the correct law. In other words, even if Officer Lindaman arrested plaintiff pursuant to a Benton County policy, practice, custom, or usage, that policy would not have been unconstitutional when the law was unclear regarding whether plaintiff's conduct constituted operating a motor vehicle. As a result, defendants' motion for summary judgment as to Count Two against Benton County is **granted**.

### A. *Corporate Damages*

Finally, defendants argue that plaintiff improperly attempts to claim damages on behalf of his trucking company. Candidly, the Court is unable to fully comprehend defendants' argument. Plaintiff alleges, "[plaintiff] was the only stockholder of the corporation[,] . . . [and t]he parties agree that [plaintiff's] losses in regard to his earnings are indistinguishable from the losses of the corporation that he owned." (Doc. 21-3, at 21). If true, it would logically follow that plaintiff's income was comprised of the net earnings of the corporation. As such, plaintiff's claim for compensatory damages would be based, at least in part, on his lost income, which also happens to be the income the corporation would have derived, if not for the alleged injury. A plaintiff may recover lost income in a successful Section 1983 case. *Brewer v. Chauvin*, 938 F.2d 860, 864 (8th Cir. 1991). Nevertheless, the issue of damages is denied as moot because the Court has found that plaintiff's claims should be dismissed.

## IV.  CONCLUSION

For the reasons stated above, the Court **grants** defendants' motion for summary judgment.  Plaintiff's complaint shall be dismissed with prejudice and judgment entered in favor of defendants.

**IT IS SO ORDERED** this 14th day of March, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa